UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TWIN STATE RAILROAD CORPORATION )<br>)<br>**Plaintiff** )<br>)<br>)<br>v. )<br>)<br>)<br>MAINE CENTRAL RAILROAD COMPANY )<br>)<br>**Defendant** )<br>)<br>) | C.A. No. 04-12292-JLT |

**DEFENDANT'S REPLY MEMORANDUM**

**I.   INTRODUCTION**

Defendant, Maine Central Railroad Company ("MEC") hereby responds to the Opposition of the Twin State Railroad Corporation ("TSR") to MEC's Motion to Dismiss the Complaint (the "Opposition"). Recognizing the broad scope of preemption pursuant to 49 U.S.C. § 10501(b), TSR concedes in its Opposition that it cannot pursue the remedy outlined in the Complaint until MEC's common carrier rights and obligations ("Rights") with regard to the rail line between Gilman and Saint Johnsbury, Vermont (the "Western Segment" or the "Line") have been abandoned and the Western Segment has been removed from the interstate rail network. Opposition, pg. 1, 4-6. TSR further concedes that the appropriate way to abandon the Western Segment is to file a formal application to adversely abandon MEC's Rights. Opposition, pg. 2-6.

As was anticipated by MEC, TSR claims that MEC's Rights with regard to the Western Segment have already been abandoned, Opposition, pg. 6; *See also Twin State Railroad Company -- Abandonment Exemption -- In Caledonia and Essex Counties, VT*, STB Docket No. AB-862 (Sub No. 0X) (Decided Oct. 12, 2004) ("*Twin State*" or the "Decision"), and therefore, the Surface Transportation Board's (the "Board" or "STB") jurisdiction has been terminated allowing this Court to hear TSR's state law causes of action with respect to the Lease and Operating Agreement entered into by MEC, the Lamoille Valley Railroad Company and, its designee, TSR (the "Lease").[1] However, TSR's reliance on this decision is misplaced.

First, upon review of TSR's Verified Notice of Exemption seeking abandonment and discontinuance of service, it is clear that TSR sought to abandon and discontinue its own service on the Western Segment, but did not seek to abandon, adversely or otherwise, MEC's Rights. Furthermore, even if it were TSR's intention to pursue adverse abandonment, by their own admission, TSR could not achieve that result pursuant to the "Out-of-Service Rail Line" Exemption procedure contained in 49 C.F.R. § 1152.50 ("Notice of Exemption Procedure") because an adverse abandonment proceeding may only be brought before the Board in the form of a formal application.

Finally, even if TSR were allowed to achieve adverse abandonment by the Notice of Exemption Procedure, the Decision imposed several conditions upon TSR's authority. Again, by TSR's own admission, these conditions prevent TSR's ability to consummate its authority until the conditions are met. Opposition, pg. 3-4, 7. Therefore, until

---

[1] The Lease was approved by the ICC, predecessor to the Board, pursuant to 49 U.S.C. § 11343(a)(2) (1978) on May 16, 1984. *Guilford Transportation Industries, Inc. -- Control -- Boston and Maine Corporation*, Finance Docket No. 29720 (Sub-No. 1); *Guilford Transportation Industries, Inc. -- Control -- Delaware and Hudson Railway Corporation*, Finance Docket No. 29772 (ICC decided May 22, 1984).

consummation is achieved, jurisdiction over the proceeding remains with the Board pursuant to the preemptive effect of § 10501(b).

## II. ARGUMENT

### A. TSR did not seek to abandon the common carrier rights and obligations of MEC in its Notice of Exemption.

On August 17, 2004, TSR filed a Verified Notice of Exemption seeking to abandon and discontinue service on the Western Segment ("Notice of Exemption") pursuant to the Notice of Exemption Procedure. It is abundantly clear throughout the Notice of Exemption that TSR only intended to abandon and discontinue its service on the Line and, in fact, only sought permission to do so.

Plainly, TSR recognized that the only interest it held was one of a lessee, *see Twin State*, Notice of Exemption, pg. 2 ("[TSR], which since 1984, has *operated* the [Western Segment] pursuant to a long-term lease agreement with MEC" (*emphasis added*)), and therefore, could only abandon and discontinue its own operations, not the Rights of MEC, unless it sought an adverse abandonment. Furthermore, despite TSR's claim in its Opposition that, in its Notice of Exemption, it sought to adversely abandoned MEC's Rights in the Line, the Notice of Exemption is completely void of even an inclination that this was the intent of TSR let alone what was actually asked of the Board.

For example, if one were to look only at the caption provided by TSR for the proceeding, which states, "Twin State Railroad Company – Abandonment and Discontinuance of *Service* in Caledonia and Essex Counties, Vermont" (*emphasis added*), MEC is not even mentioned. It is apparent that TSR simply wished to abandon and discontinue its operation on the Western Segment, not abandon MEC's interest in the Line thereby removing it from the interstate rail network. Typically, the caption for an

3

adverse abandonment application (1) states the name of the rail carrier the adverse abandonment is being sought against; (2) states the rail line or the location of the rail line the party is seeking to adversely abandon; and, most importantly, (3) that the application is for adverse abandonment.[2]

Furthermore, Section 2 of the Notice of Exemption, entitled "Relief Sought – 49 C.F.R. 1152.22(a)(3)," provides that TSR "seeks authority to abandon and discontinue service over the [Line.]" Again, neither MEC nor TSR's claimed relief of adverse abandonment is mentioned. Other than an extensive recitation of the terms of the Lease, pursuant to which TSR claims it may "exercise it[] contractual rights … to abandon and discontinue service over the Subject Line,"[3] TSR does not discuss MEC's rights in the Line let alone provide a basis for their abandonment, adversely or otherwise.

Since TSR did not seek to adversely abandon MEC's Rights in its proceeding before the Board, the Decision cannot and did not grant TSR the authority to do so.

### B. TSR may not seek adverse abandonment of MEC's Rights by the Notice of Exemption Procedure

As outlined below, TSR may not seek to abandon the Line pursuant to the Notice of Exemption Procedure because they do not own the Line; they simply maintain a leasehold interest. Additionally, even if TSR could utilize the Notice of Exemption Procedure and had, in fact, sought adverse abandonment of MEC's Rights in the Notice of Exemption, by TSR's own admission,[4] authority to do so would have been denied

---

[2] *See generally Yakima Interurban Lines Association - Adverse Abandonment – In Yakima County, WA*, STB Docket No. AB-600 (Decided November 18, 2004).

[3] This analysis is particularly confusing since the authority to abandon and discontinue rail lines is governed exclusively by the Board pursuant to 49 U.S.C. § 10501(b) and § 10903, not by rights conferred in any contract.

[4] Throughout its Opposition TSR cites several authorities for the premise that it may adversely abandon MEC's Rights in the Western Segment pursuant to the Notice of Exemption procedure. However all of the authorities cited clearly state that an adverse abandonment proceeding may only be brought before the

because an adverse abandonment proceeding must be brought before the Board in the form of a formal application.

49 U.S.C § 10903[5] provides that a rail line cannot be abandoned until the Board finds that public convenience and necessity ("PCN") require or permit abandonment. 49 U.S.C. § 10903(1995). *See also Exemption of Out of Service Rail Lines*, 47 Fed. Reg. 13538 (1982) ("*FR Notice*"). To obtain abandonment authority, the party seeking such authority must submit an application with the information contained in 49 C.F.R. § 1152.22 (the "Abandonment Requirements") to the Board. The Board determines the

---

Board by application, not by notice of exemption. For example, TSR states, "As the First Circuit explained in *Howard v. Surface Transportation Board*, an *abandonment application* can be brought to the STB by the rail carrier itself or by a third party" (*emphasis added*). Opposition, pg. 2. TSR also cited the following from *Thompson v. Texas Mexican Ry. Co.*, 328 U.S. 134, 145 (1946), "There is no requirement … that the *application [for abandonment* to the STB] be made by carrier whose operations are sought to be abandoned" (*emphasis added*). Opposition pg. 3. TSR further states, "The STB, itself, has recognized that an *application to abandon* may be brought by a third party and may be granted even of the third party objects" (*emphasis added*). *Id.* TSR cites to *Maine Central Railroad Company – Abandonment Exemption – in Androscoggin County, ME*, Docket No. AB-83 (Sub No. 16X) (September 14, 2000) ("*Maine Central*") and states, "In a case involving Maine Central itself[,] the STB reiterated (1) that it could grant an *adverse abandonment application* (2) over the objection of the carrier and (3) that its grant of such an application would end its involvement in the railroad line and clear the way for the operation of state law (*emphasis added*). Opposition, pg. 4. Citing again to *Maine Central*, TSR further states, "The STB pointed out that the shipper or the Maine Department of Transportation could file an *application* asking the STB '*to find that the public convenience and necessity no longer require the presence of [Maine Central] on the line*'" (*emphasis added*). Opposition, pg. 4-5. Finally, TSR states, "However, as the cases cited earlier in this memorandum demonstrate, a third party may seek to abandon a railroad line (an adverse abandonment) and the STB may grant such *an application* over the objection of the carrier" (*emphasis added*). Opposition, pg. 6.

[5] Section 10903 provides:
"(a)(1) A rail carrier providing transportation subject to the jurisdiction of the Board under this part who intends to –
    (A) abandon any part of its railroad lines; or
    (B) discontinue the operation of all rail transportation over any part of its railroad lines,
must file an application relating thereto with the Board. An abandonment or discontinuance may be carried out only as authorized under this chapter …

(d) A rail carrier providing transportation subject to the jurisdiction of the Board under this part may –
    (1) abandon any part of its railroad lines; or
    (2) discontinue the operation of all rail transportation over any part of its railroad lines;
only if the Board finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance. In making the finding, the Board shall consider whether the abandonment or discontinuance will have a serious, adverse impact on rural and community development.
49 U.S.C. § 10903(a)(1), (d)(1995).

5

merits of the abandonment by balancing the need of shippers and the community for continued rail service against the financial burden on the railroad of continuing to operate the line. *FR Notice* at 13538.

Further, section 10502[6] provides the Board with the power to exempt any of the Abandonment Requirements if the Board finds that such an application is not necessary to carry out the transportation policy of section 10101 and either (1) the abandonment is of limited scope or (2) full compliance with the Abandonment Requirements in the application is not necessary to protect shippers from the abuse of market power. 49 U.S.C. § 10502(1995). The Board may exercise this power pursuant to an individual petition or, alternatively, the Board may exempt an entire class of transactions or persons from the Abandonment Requirements. *FR Notice*, 13539.

The Notice of Exemption Procedure is an example of the latter. There, the Board exempted all "out-of-service rail lines"[7] from the Abandonment Requirements and implemented the regulations at 49 C.F.R. §1152.50 to govern the abandonment of an out-of-service rail line. *See Exemption of Out of Service Rail Lines*, ICC Ex Parte No. 274 (Sub No. 8) (Decided June 3, 1983), 366 I.C.C. 885 (1983) ("*ICC Notice*"). Unlike

---

[6] Section 10502 provides, "In a matter related to a rail carrier providing transportation subject to the jurisdiction of the Board under this part, the Board, to maximum extent consistent with this part, shall exempt a person, class of persons, or a transaction or service whenever the Board finds that the application in whole or in part of a provision of this part –
    (1) is not necessary to carry out the transportation policy of section 10101 of this title; and
    (2) either –
        (A) the transaction or service is of limited scope; or
        (B) the application in whole or in part of the provision is not needed to protect shippers from the abuse of market power.
49 U.S.C. § 10502(a) (1995).

[7] "Out of service lines include those lines where there may still be overhead traffic, so long as there has been no traffic originating or terminating on the line for at least 2 years." *Exemption of Out of Service Rail Lines*, ICC Ex Parte No. 274 (Sub No. 8) (Decided June 3, 1983), 366 I.C.C. 885 (1983), pg. 2.

6

exemption pursuant to an individual petition, however, the Notice of Exemption Procedure is only available to the railroad who owns the line. *ICC Notice*, pg 4.

Typically, an abandonment proceeding is brought before the Board by the rail carrier on the line that is sought to be abandoned. However, a third-party may seek authority from the Board to abandon the Rights of the rail carrier on a line adversely or without the consent of said carrier. This is known as an adverse abandonment. *See Modern Handcraft, Inc. – Abandonment in Jackson County, MO*, ICC Finance Docket No. 293330 (Decided August 19, 1981), 363 I.C.C. 969 ("*Modern Handcraft*"); *Baltimore and Annapolis Railroad Company – Abandonment of Operations Between Clifford Junction, Baltimore City and Annapolis, in Baltimore and Anne Arundel Counties, Maryland*, ICC No. AB-71 (Decided May 26, 1976), 348 I.C.C. 678 ("*Baltimore and Annapolis*"); and *Thompson, et al. v. Texas Mexican Ry. Co.*, 328 U. S. 134, 66 S.Ct. 937 (1946) ("*Thompson*").

Therefore, every request for Board approval to abandon and/or discontinue rail service falls, generally, into one of four categories: a formal application filed under 49 C.F.R. § 1152.22; a petition for exemption filed under the 49 U.S.C. § 10502 exemption procedure; the Notice of Exemption Procedure; or an adverse abandonment application, which must be made in the form of a formal application. *See Policy Statement: Maps in Abandonment Proceedings*, Ex Parte No. 274 (Sub No. 21) (Decided April 15, 1991), pg. 1 and n. 3.

In its Opposition, TSR claims that it can and did seek authority to adversely abandon MEC's Rights in the Western Segment by filing the Notice of Exemption. However, the adverse abandonment process is not as simple as TSR would like this Court

7

to believe. First, an adverse abandonment proceeding must be brought before the Board in the form of a "formal abandonment application [with] an opportunity for hearing" where PCN can be evaluated. *Wisconsin Department of Transportation – Abandonment Exemption*, ICC Finance Docket No. 31303 (Decided: November 23, 1988) ("*WisDot*"), pg. 2. *See also Massachusetts Bay Transportation Authority – Exemption – Discontinuance of Service in Arlington, Bedford and Lexington, MA*, ICC Finance Docket No. 31269 (Decided: August 22, 1990); *City of Colorado Springs and Metex Metropolitan District – Petition for Declaratory Order – Abandonment Determination; The Denver and Rio Grande Western Railroad Company – Petition for Declaratory Order – Spur Track Determination*, ICC Finance Docket Nos. 31271 and 31230 (Decided March 22, 1989), pr. 3 ("[A]ny adverse abandonment request must be made in the context of an abandonment application.").[8]

Second, "only the railroad owning the [Line] may use the [Notice of Exemption Procedure]" to abandon a line. *ICC Notice*, pg. 4. As stated above, by its own admission, the only interest TSR holds is one of a lessee, *see Twin State*, Notice of Exemption, pg. 2. It does not own the Line. Accordingly, the Notice of Exemption

---

[8] An adverse abandonment is essentially a "forced abandonment." *WisDot* at 3. "Traditional abandonment authority is permissive[.]" *Id.* The Board's exemption power, found in Section 10502, may "only be used to exempt transactions or services from the provisions of the Interstate Commerce Act; it [can]not be used affirmatively to impose new regulation." *Id. citing Brae Corp. v. United States*, 740 F.2d 1023, 1056-1057 (D.C. Cir. 1984) ("*Brae*"). More particularly, the Board's "exemption power is to be used to alleviate regulatory requirements that burden the regulated entity [in order] to permit carriers to do that for which they would otherwise need prior [Board] approval." *Id. citing Brae.* The Board's exemptive power does not authorize it to require a carrier to take a particular action against its will. If granted as an adverse abandonment, the Notice of Exemption would relieve MEC of its Rights, an affirmative action by the Board. *Id.* The Notice of Exemption seeks the Board's authority to force MEC to abandon its Rights in the Line, such authority would be clearly coercive and therefore regulatory, the kind and nature of which was proscribed by the court in *Brae*. *Id.* The Notice of Exemption would not lessen the Board's authority, "but would expand it to permit [the Board] to abandon the [Western Segment] without requiring [it] to adhere to the provisions of the abandonment statute or [the Board's] implementing regulations. *Id.*

cannot and did not achieve adverse abandonment authority and the STB retains jurisdiction over the matter.

### C. Jurisdiction over this matter remains with the Board until the conditions imposed in the Decision are met.

By its own admission,[9] even if TSR had been granted adverse abandonment authority by the Board, this authority would not be effective until all conditions imposed by the STB have been satisfied and the carrier seeking such authority has consummated the transaction. *Maine Central RR Co.—Abandonment Exemption—In Androscoggin Cty, ME,* STB Docket No. AB-83 (Sub-No. 16X), (STB Served September 14, 2000); 49 C.F.R. § 1152.29(e). Accordingly, the Western Segment continues to be subject to STB jurisdiction.

### D. This case should be referred to the STB under the doctrine of primary jurisdiction.

In the alternative, should the Court determine that remedy sought by TSR is properly brought before this Court; the dispute should be stayed and referred to the STB under the doctrine of primary jurisdiction. "The primary jurisdiction doctrine is intended to 'serve [ ] as a means of coordinating administrative and judicial machinery' and to 'promote uniformity and take advantage of agencies' special expertise.'" *Pejepscot*, 215 F.3d at 205 *citing Mashpee Tribe v. New Seabury Corp.*, 593 F.2d 575, 580 (1st Cir. 1979).

---

[9] In its Opposition, TSR states, "Once a carrier abandons a rail line pursuant to authority granted by the STB, the line is no longer part of the national transportation system, and although the Board is empowered to impose conditions on abandonments, as a general proposition STB jurisdiction terminates. Opposition, pg. 2. TSR further states, "The Decision unambiguously grants authority to abandon the line of railroad (subject to the conditions contained in the Decision)." Opposition, pg. 3. Finally, TSR states, "The Court said that this argument reflected a misunderstanding of the Interstate Commerce Act: 'unless the Commission attaches post abandonment conditions to a certificate of abandonment, the Commission's authorization of an abandonment brings its regulatory mission to an end.'" Opposition, pg. 4.

Because the present cause of action involves (1) a determination that "l[ies] at the heart of the task assigned to [the STB] by Congress"; (2) STB's expertise is required to "unravel intricate, technical facts" surrounding abandonment authority; and (3) in light of the highly technical nature of the facts, the STB's determination would "materially aid the court," the action should be stayed and referred to the STB. *Id. citing Commonwealth of Massachusetts v. Blackstone Valley Elec. Co.*, 67 F.3d 981, 992 (1st Cir. 1995). *See also Boston and Maine Corp, v. Town of Ayer*, 191 F. Supp.2d 257, 259 (D. Mass 2002).

### III. CONCLUSION

For the reasons stated herein and in other pleadings in this matter, MEC respectfully requests that its motion to dismiss be allowed.

**January 24, 2005**

Respectfully submitted,

Katherine E. Potter
BBO# 651726
Iron Horse Park
North Billerica, MA 01862
(978) 663-1215
kpotter@guilfordrail.com

*Counsel for Defendant
Springfield Terminal Railway Co.*

## CERTIRFICATE OF SERVICE

I hereby certify that true copies of the foregoing documents were served on January 24, 2005, by Federal Express, next day delivery, upon:

Leonard M. Singer, Esq.
Craighead Glick LLP
277 Dartmouth Street
Boston, Massachusetts 02116

Dated: January 24, 2005

_____
Katherine E. Potter