UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB 18 A 11: 05

U.S. DISTRICT COURT
DISTRICT OF MASS.

*****************************************

TWIN STATE RAILROAD
CORPORATION

       Plaintiff

v.

MAINE CENTRAL RAILROAD
COMPANY

       Defendant

*****************************************

Civil Action

04-12292 JLT

## FURTHER OPPOSITION TO MOTION TO DISMISS

Plaintiff Twin State Railroad Corporation ("Twin State") submits this Further Opposition to Maine Central Railroad Company's Motion to Dismiss.[1] Ignoring the plain and unambiguous language of the Surface Transportation Board's (the "Board") decision (the "Decision") with respect to the railroad line at issue, Maine Central Railroad Company ("Maine Central") continues to assert that this Court does not have the power to decide issues relating to the lease between it and Twin State.

Contrary to Maine Central's assertions, it is clear that Twin State sought permission from the Board to abandon the railroad line and not simply to discontinue its service over that line. And it is even clearer that the Board understood what Twin State was seeking and that it determined that the public convenience and necessity permitted the abandonment of the line.

As the Supreme Court explained in *Preseault v. Interstate Commerce Commission*, 494

---

[1] On or about January 24, 2005 Maine Central filed a motion to file a reply to Twin State's Opposition to its Motion to Dismiss. Twin State did not oppose the filing of a reply but did seek leave to file a response to the Reply Memorandum. This Further Opposition is its response to Maine Central's Reply Memorandum.

U.S. 1, 6 at n.3 (1990), there is a distinction between abandonment of a rail line and discontinuance of service. Once a carrier abandons a rail line, the line is no longer part of the national transportation system. In contrast, discontinuance authority allows a railroad to cease operating a line for an indefinite period while preserving the rail corridor for possible reactivation of service in the future. In light of this distinction, it is highly material that Twin State unambiguously and consistently sought an "abandonment *and* discontinuance of service." (Emphasis supplied) The caption of its submission to the Board[2], its introduction thereto and its statement of "Relief Sought" all referred to abandonment "and" discontinuance of service. Furthermore Twin State's stated purpose for its submission to the Board was "to be able to sell and/or salvage the rails, ties and other track materials" on the line. Manifestly, the sale and salvage of the rail, ties and track materials is possible only if the line is abandoned.

The Decision[3] removes any doubt whatsoever that the Board has authorized abandonment of the subject line. There is simply no room for arguing that the Board has authorized only a discontinuance of service. Repeatedly throughout the Decision the Board refers to abandonment, without even mentioning discontinuance of service. Thus, the caption refers to "abandonment" and the opening sentence recites that Twin State has filed "to abandon" approximately 20 miles of rail line. The Decision goes on to discuss the conditions to be imposed "on any decision granting abandonment authority." On page 2 of its decision the Board states that it "has processed [Twin State's] filing as one for authority to abandon the line." Finally, the Board's order recites that "the abandonment of the line" is subject to various named conditions.

Furthermore, in rendering its Decision the Board was explicitly directed to the distinction

---

[2] Attached to Maine Central's Motion to Dismiss as Exhibit D.

[3] Attached to Twin State's Opposition to Motion to Dismiss as Exhibit 1.

between a discontinuance of service and an abandonment. The Board acknowledged that Maine Central was arguing that Twin State was seeking "discontinuance and not abandonment of authority." Notwithstanding Maine Central's argument, the Board granted authority to abandon the line.

Maine Central's argument boils down to an assertion that the Board might have required Twin State to proceed in a manner different from the manner in which it did proceed. Nothing, however, in 49 USC 10903 or in the regulations thereunder required any more than what Twin State did. The question of whether the public convenience and necessity permitted the abandonment of this line was presented to the Board. As a result of the Board's Decision on that question, this Court is free to adjudicate the matters before it.

One further argument in Maine Central's Reply Memorandum requires response. Maine Central argues that the Board's exemption power may not be used to impose obligations. See Maine Central's Reply Memorandum at n. 8. The Board's decision does not impose any obligation on Maine Central. The Decision is merely a determination by the Board that the abandonment of this line is permitted. Maine Central is not being forced to do anything. It is not required (subject to its obligations under the lease) to salvage any rail, or material and it continues to have the rights and obligations that it reserved in its lease with Twin State.

The Board's Decision allowing abandonment is hardly surprising. This line of railroad has had no service whatsoever for a number of years and the decision to allow its abandonment is entirely consistent with numerous other abandonment authorizations granted by the Board. Maine Central's Motion to Dismiss amounts to nothing more than an assertion that the Board should have imposed procedural hurdles.

The Board's Decision leaves no room to doubt the conclusion that this Court is free to

determine the issues that are before it.

TWIN STATE RAILROAD
CORPORATION

By its attorneys,

_Leonard M. Singer_
Leonard M. Singer
BBO No. 464600
Craighead Glick
277 Dartmouth Street
Boston, Massachusetts 02116
(617) 859-8200

## CERTIFICATE OF SERVICE

I, Leonard M. Singer, hereby certify that I served the foregoing on all parties. Such service was made by causing a copy of the foregoing to be mailed to Katherine E. Potter Springfield Terminal Railway Company, Iron Horse Park, North Billerica, Massachusetts 01862 February 17, 2005.

_Leonard M. Singer_
Leonard M. Singer