UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TWIN STATE RAILROAD CORPORATION | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) C.A. No. 04-12292-JLT<br>) |
| MAINE CENTRAL RAILROAD COMPANY | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OF REASONS IN SUPPORT
OF MOTION TO DISMISS COMPLAINT**

The Defendant in this action, Maine Central Railroad Company ("Maine Central"), has moved, pursuant to this Court's Order dated May 24, 2006, Rule 12(b)(1) of the Federal Rules of Civil Procedure and Rule 7.1 of the Rules of this Court, to dismiss the complaint in this action without prejudice to refiling within thirty (30) days of a substantive decision by the Surface Transportation Board granting an application for adverse abandonment and discontinuance authority on the rail line that is the subject of this action.

**FACTUAL BACKGROUND**

Maine Central and Twin State are rail carriers that provide interstate rail freight service and are subject to the jurisdiction of the United States Surface Transportation Board ("STB") under the Interstate Commerce Act ("ICA").[1]  The ICA confers upon the STB exclusive jurisdiction over all aspects of rail transportation.  49 U.S.C. § 10501(b) (2000).[2]

---

[1] The ICA has been codified, principally to 49 U.S.C. §§ 701-727 and 10101-16106.

[2] The full text of section 10501(b) reads:

1

Maine Central leased and granted Twin State Railroad Corporation ("Twin State") the right to use and operate a line of railroad between Gilman, Vermont and Saint Johnsbury, Vermont (the "Line") pursuant to a Lease and Operating Agreement (the "Lease") dated March 1, 1984 which was approved by the Interstate Commerce Commission (predecessor to the STB) making the lease subject to the ICA.  Prior to that, the Line was operated by Maine Central pursuant to its common carrier rights and obligations under the ICA.

On August 17, 2004, Twin State filed a Verified Notice of Exemption to the STB pursuant to 49 C.F.R. 1152 Subpart F- *Exempt Abandonments*, seeking to abandon the Line in order to salvage the rail, ties and other track materials (herein referred to as "the physical assets").  In a decision served October 12, 2004 ("October decision"), the STB granted Twin State a conditional abandonment exemption subject to several conditions including the condition that Twin State "leave the line, track, ties and other track materials intact and undisturbed"; however, the STB did not resolve whether Twin State has the legal right to abandon and salvage the Line pursuant to the Lease.  *See Twin State R.R. Co.—Abandonment Exemption—In Caledonia and Essex Counties, VT,* STB Docket No. AB-862X, at page 3 (served October 12, 2004).  A copy of the October decision is annexed hereto as Exhibit A.

On October 28, 2004, Twin State filed a complaint in this action to obtain a declaration of the rights and liabilities of the parties pursuant to the Lease and specifically, that the physical

---

"(b)    The jurisdiction of the Board over—

(1)    transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2)    the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

is exclusive.  Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."

assets are no longer required for the performance of Twin State's duties under the Lease and, further, that Twin State has the right to retire the physical assets and retain the proceeds. Complaint ¶ 13. On December 3, 2004, Maine Central filed a motion to dismiss the underlying complaint arguing that Twin State's claims are preempted by 49 U.S.C. § 10501(b), the Interstate Commerce Act ("ICA"), which gives the STB exclusive jurisdiction over all aspects of rail transportation, including the leasing, abandonment or discontinuance of rail lines. Maine Central also argued that pursuant to the terms of the Lease, Maine Central retains ownership interest of the Line and common carrier rights and, therefore, only Maine Central may seek authority from the STB to abandon the Line. Maine Central requested that this Court refer the matter to the STB under the doctrine of primary jurisdiction.

On August 3, 2005, this Court issued an Order denying Maine Central's Motion to Dismiss the Complaint without prejudice to refiling after the STB answers the following questions which were referred to the STB by this Court for determination: (a) whether the Board's October decision preempts Twin State's claim that the Line's physical assets are no longer required for the performance of its duties pursuant to the Lease; (b) whether the Board's October decision preempts Twin State's claim that it has the right to retire the Line's physical assets and retain the proceeds pursuant to the Lease; and (c) whether the STB's October decision preempts Twin State's claim requesting this court to declare the rights and liabilities of the parties under the Lease. A copy of the Court's Order is annexed hereto as Exhibit B.

In a decision served November 18, 2005 ("November decision"), the STB found that the STB retains jurisdiction regarding enforcement of the terms of the Lease until the STB authorizes full abandonment and the Line is no longer subject to the ICA. *See Twin State R.R. Co.—Abandonment Exemption—In Caledonia and Essex Counties, VT,* STB Docket No. AB-

862X, at pages 2-3 (served November 18, 2005). A copy of the November decision is annexed hereto as Exhibit C.

The STB found "[w]hile the court may interpret the Lease as to the parties' ownership interests in the line's assets, in these circumstances, the physical assets underlying the line may not be removed for salvage until the Board has authorized full abandonment (including the apparent need to authorize [Maine Central]'s abandonment of the line) … In sum, *the ICA preempts any court order* that would require or allow the removal of the ties, track, equipment and other property on the line before full abandonment authority is issued and any and all conditions are met." *Id.* at pages 2-3. (Emphasis added).

The STB further revoked the conditional abandonment exemption granted in the October decision and instead granted Twin State only discontinuance authority. The STB also found that Maine Central retains a common carrier obligation to the Line and that the exercise of the abandonment authority granted in the October decision was premature. *Id.* at page 2.

Pursuant to this Court's order dated May 24, 2006, Maine Central has moved to dismiss Twin State's complaint on the ground that this court lacks subject matter jurisdiction because no actual case or controversy exists before this Court until the STB authorizes abandonment of the Line. Moreover, until the STB authorizes abandonment, if indeed it ever does, the STB retains jurisdiction over the Line and any order issued by this Court regarding the removal of the physical assets would be preempted and, therefore, without force or effect until some unforeseen future event takes place which may never occur. Further, Twin State's complaint should also be dismissed because this matter lacks ripeness.

# ARGUMENT

I. **The Complaint Must Be Dismissed For Lack of Jurisdiction Because There is No Justiciable Case or Controversy.**

The jurisdiction of the federal courts is limited to actual "Cases" and "Controversies." U.S. Const. Art. III, § 2, cl. 1. "[T]he general rule is that, in a federal court, justiciability requires the existence of an actual case or controversy." *Goodwin v. C.N.J., Inc.,* 436 F.3d 44, 48 (1st Cir. 2006), citing U.S. Const., art. III, § 2, cl. 1 and *Cruz v. Farquharson,* 252 F.3d 530, 533, (1st Cir. 2001). Further, "in order to properly invoke federal jurisdiction, an actual case or controversy must exist at all stages of the proceeding and not simply at the date the action is initiated." *Courtemanche v. General Services Administration*, 172 F.Supp.2d 251, 263 (1st Cir. 2001)[3]. Further, "[i]f events transpire following the taking of an appeal that make it impossible for the court of appeals to provide effective relief, the matter is no longer justiciable." *Goodwin* at 48.[4] Therefore, if an event such as the STB November decision occurs which makes it impossible for this Court to provide effective relief to Twin State, there is no longer a case or controversy and the matter is no longer justiciable.

In this matter, the STB found in its November decision that "the ICA *preempts* any court order that would require or allow the removal of the ties, track, equipment and other property on the line before full abandonment authority is issued and any and all conditions are met." *Twin State R.R. Co.* at pages 2-3. The STB specifically stated that even if this Court finds that Twin State has a right to the physical assets when it is retired, the right "can be exercised *only* after the

---

[3] Citing *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Moreover, "[t]he "case or controversy" requirement persists at all stages of the litigation and not merely at the time suit is instituted." *Goodwin* at 48 citing *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Erwin Chemerinsky, Federal Jurisdiction 125-26 (4th ed.2003) (collecting cases).
[4] *Id.* at 48 citing *Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 72 (1st Cir. 2004).

Board has authorized full abandonment of the line." *Id.* at page 2. (Emphasis added). Therefore, until the STB actually authorizes full abandonment of the Line, this Court is preempted from granting the relief sought by Twin State in this action and, therefore, no actual case or controversy exists before this Court until that time.

As the STB stated in its November decision, "[a]ny party seeking the abandonment of a rail line … must first obtain appropriate authority from the Board[5] … notwithstanding any contractual arrangement between parties regarding provisions of rail service or use of a rail line."[6] Pursuant to the November decision, in order for any order of this Court to be enforced, the STB must actually authorize abandonment which may be *voluntary*, if sought by Maine Central, or *adverse*, if sought by Twin State through the adverse abandonment process. At the present time, Maine Central has no intention of seeking voluntary abandonment of the Line. Therefore, the only alternative for Twin State to obtain abandonment would be for it to file for adverse abandonment. The STB cautioned that "[a]dverse abandonments are often contentious matters and cannot be obtained through the Board's exemption procedures. Instead, TSRR [Twin State] would need to file an application for such adverse action under 49 U.S.C. 10903 and the Board's regulations." *Id.* at page 2. At this time, it is Maine Central intention that it would fiercely oppose any application for adverse abandonment sought by Twin State.

## II.  The Complaint Must Be Dismissed For Lack of Ripeness.

"The ripeness doctrine is designed to 'prevent the courts, through an avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Courtemanche v. General Services Administration,* 172 F.Supp.2d 251, 259 (1st Cir. 2001) citing *Ernst &*

---

[5] *Twin State R.R. Co.—Abandonment Exemption—In Caledonia and Essex Counties, VT,* STB Docket No. AB-862X, at pages 1-2 (served November 18, 2005) citing *Consolidated Rail Corp. v. ICC,* 29 F.3d 706 (D.C. Cir. 1994).
[6] *Id.* at page 2 citing *Thompson v. Texas Mexican R. Co.,* 328 U.S. 134, 147 (1946).

*Young v. Depositors Economic Protection Corp.,* 45 F.3d 530, 539, (1st Cir. 1995) quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The Court must apply a two-part test to evaluate ripeness in the context of a declaratory judgment action. *Id.* at 258 citing *Abbot Labs.,* 387 U.S. at 149, 87 S.Ct. 1507. In determining ripeness, the Court must consider (1) "the fitness of the issue for immediate review," and (2) "the hardship to the litigant should review be postponed." *Id.* at 258 citing *Riva v. Commonwealth of Mass.,* 61 F.3d 1003, 1009 (1st Cir. 1995). The Court found that ordinarily, both prongs of the test must be satisfied in order to demonstrate ripeness. *Id.* at 258 citing *Stern v. United States District Court for the District of Massachusetts*, 214 F.3d 4, 10 (1st Cir. 2000) in turn citing *Ernst & Young,* 45 F.3d at 535, *cert. denied,* 531 U.S. 1143, 121 S.Ct. 127, 148 L.Ed.2d 954 (2001).

Regarding the "fitness for review" prong of the test, the First Circuit holds the critical question to be whether the claim involves "uncertain and contingent events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 258 citing *Mass. Ass'n. of Afro-American Police, Inc. v. Boston Police Dept.,* 973 F.2d 18, 20 (1st Cir. 1992); *Riva, 61 F.3d at 1009; Ernst & Young, 45 F.3d at 537.* In the present case, Twin State is seeking a declaration of its rights under the Lease which can only be enforced *if, and only if*, the STB authorizes full abandonment. "A claim that 'depends on future events that may never come to pass, or that may not occur in the form forecasted,' lacks ripeness." *Id.* at 259 citing *Ernst & Young, 45 F.3d at 537.*

Regarding the "hardship" prong of the test, the court in *Courtemanche* found that "a showing of direct and immediate harm is generally necessary" and that "other kinds of injuries occasionally may suffice." *Id.* at 261 citing *Ernst & Young, 45 F.3d at 536.* In this case, Twin State has not demonstrated that it will suffer any hardship or specifically, a direct and immediate

harm, if this Court withholds judicial consideration of its rights under the Lease at this time, only the possibility that resolution of an uncertain issue will take longer that Twin State had hoped. Further, Twin State faces no direct and immediate harm regarding the judicial interpretation of its rights under the Lease because until the STB grants full abandonment, its rights simply cannot be enforced.  Further, Twin State held its rights under the Lease for twenty years and took no prior action to seek the remedy sought here.  Further, as a sign that Twin State will not suffer immediate harm, Twin State voluntarily discontinued its rights under the Lease and has taken no action to file an adverse abandonment application against Maine Central's rights since told it was a precursor to any relief by STB seven months ago and since counsel's assertion in open court.

In conclusion, this matter lacks ripeness because Twin State is seeking this Court to determine its rights under the Lease that may never be enforceable if the STB does not grant the adverse abandonment.  Twin State is asking this Court to make a determination based upon the hypothetical that the STB *would* grant the adverse abandonment which cannot be proven. "The ripeness doctrine exists primarily to avoid adjudication of merely hypothetical disputes." *Courtemanche* at 258, citing *Mass. Ass'n. of Afro-American Police, 973 F.2d at 20.*

Further, the process of adverse abandonment may take several years.  By the time the STB makes a determination regarding Twin State's application for adverse abandonment, and *if* the abandonment is granted by the STB, the circumstances surrounding this case may be substantially different than those present today.

## CONCLUSION

For the reasons set out above, Twin State's Complaint must be dismissed in its entirety without prejudice to refiling within thirty (30) days of a substantive decision by the STB granting an

8

application for adverse abandonment and discontinuance authority on the rail line that is the subject of this action.

                                      Respectfully submitted,

                                      */s/ Alexandra B. Schmit*
                                      Alexandra B. Schmit (BBO# 662942)
                                      14 Aviation Avenue
                                      Portsmouth, NH 03801
                                      Tel. 603-766-2006
                                      aschmit@bmairways.com

                                      Robert B. Culliford (BBO# 638468)
                                      14 Aviation Avenue
                                      Portsmouth, NH 03801
                                      Tel. 603-766-2004
                                      rculliford@flypanam.com

                                      Counsel for Defendant
                                      *Maine Central Railroad Company*

Dated: June 7, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 7, 2006.

                                      */s/ Alexandra B. Schmit*
                                      Alexandra B. Schmit