35048   SERVICE DATE – LATE RELEASE OCTOBER 12, 2004
DO

SURFACE TRANSPORTATION BOARD

DECISION

STB Docket No. AB-862X

TWIN STATE RAILROAD COMPANY–ABANDONMENT EXEMPTION–IN CALEDONIA AND ESSEX COUNTIES, VT

Decided:  October 12, 2004

Twin State Railroad Company (TSRR) filed a notice of exemption under 49 CFR 1152 Subpart F–<u>Exempt Abandonments</u> to abandon approximately 20 miles of rail line between milepost 0.057 in St. Johnsbury and Railroad Engineering Station 5503 at River Road (Town Road) in Lunenburg (Gilman), in Caledonia and Essex Counties, VT.  Notice of the exemption was served and published in the <u>Federal Register</u> on September 3, 2004 (69 FR 53973-74).  The exemption was scheduled to become effective on October 6, 2004, but a formal expression of intent to file an offer of financial assistance (OFA) to purchase the line was timely filed by the State of Vermont, Agency of Transportation.  The filing of that expression of intent automatically stayed the effective date of the exemption for 10 days until October 16, 2004, to permit the Board to address any OFA filed on or before October 6, 2004.  <u>See</u> 49 CFR 1152.27(c)(2)(i).  No OFA has been filed.

The Board's Section of Environmental Analysis (SEA) issued an environmental assessment (EA) in this proceeding that was served on September 7, 2004.  In the EA, SEA recommended that the following conditions be imposed on any decision granting abandonment authority.  First, SEA recommended that, prior to conducting any abandonment and salvaging activities, TSRR be required to consult with the U.S. Army Corps of Engineers - New England District (Corps) on permitting requirements for any abandonment and salvaging activities that may occur within waters of the United States, including, but not limited to, streams, rivers, lakes, and wetlands.  Second, SEA recommended that, prior to conducting any abandonment and salvaging activities, TSRR be required to consult with the U.S. Fish and Wildlife Service - Concord, New Hampshire Office (FWS), regarding potential impacts from salvaging activities to threatened species, and report the outcome of these consultations to SEA.  Third, SEA recommended that, to protect the line for potential future use or interim recreational use, if salvaging occurs, TSRR be required, during salvage activities, to remove all ties and rails from the right-of-way for proper disposal, reuse or recycling.  Fourth, SEA recommended that TSRR be required to notify the U.S. Department of Commerce, National Geodetic Survey (NGS), 90 days prior to salvage activities so that NGS can plan for the potential removal of the 11 identified geodetic station markers on the line that may be affected by the proposed abandonment.  Fifth, SEA recommended that TSRR be required to retain its interest in and take no steps to alter the historic integrity of the right-of-way until completion of the section 106 process of the National Historic Preservation Act, 16 U.S.C.

STB Docket No. AB-862X

470f (NHPA), so that (a) TSRR may submit additional information to the Vermont Agency for Commerce and Community Development, Division of Historic Preservation (SHPO), and (b) the SHPO may complete its assessment.

Comments to the EA were due by September 21, 2004. FWS contacted SEA by telephone and indicated that it had commented on TSRR's environmental report in November 2003, and requested that its comments be reflected in the environmental documentation for the proposed abandonment. SEA indicates that the FWS comment letter was not referenced in TSRR's notice of exemption and had not otherwise been provided to SEA or brought to SEA's attention by TSRR. FWS's comment letter states that there are no Federally listed or proposed threatened or endangered species or critical habitat under the jurisdiction of FWS known to occur in the projected area. Therefore, FWS concluded that no further consultation under section 7 of the Endangered Species Act would be required for 1 year from November 6, 2003, unless additional information on listed or proposed species becomes available. Accordingly, in recognition of FWS's comments, SEA recommends that the FWS condition recommended in the EA be changed to require instead that, if salvaging activities have not been initiated by November 6, 2004, TSRR shall conduct a follow-up consultation with FWS - New England Field Office, prior to initiating salvaging activities, regarding potential impacts from salvaging activities to threatened and endangered species and TSRR shall report the outcome of these consultations to SEA.

On September 21, 2004, Maine Central Railroad Company (MEC) filed a reply to TSRR's notice of exemption. MEC claims that TSRR's interest in the line is limited to that of a lessee, and that TSRR does not have the right to abandon the line. It states that, when the parties entered into a lease agreement dated March 1, 1984, MEC did not evidence any intent to convey ownership in the line or its common carrier rights and obligations to TSRR or anyone else, and that MEC has not evidenced any such intent throughout the term of the lease. MEC claims that the lease makes clear that it was the intent of both parties that MEC retain ownership interest and common carrier rights and obligations in the line. MEC points out that, rather than discontinuing its leasehold interest, TSRR claims to have the right also to remove the rail, ties, and other track materials. MEC requests that the Board specifically condition any authority granted to TSRR (which MEC argues would be discontinuance and not abandonment authority) by requiring TSRR to leave the line, track, ties and other track materials intact and undisturbed. TSRR has not responded to the MEC submission.

MEC's filing raises a question (not resolved in this decision) about whether TSRR has the legal right, pursuant to its 1984 agreement with MEC, to abandon and salvage the line. TSRR has sought abandonment authority in this proceeding, the Board has processed TSRR's filing as one for authority to abandon the line, and SEA has recommended conditions covering possible abandonment and salvage of the line. In this situation, conditions will be imposed as recommended by SEA that would apply in the event of full abandonment and salvaging of the line. At the same time, in light of the

STB Docket No. AB-862X

uncertainty regarding TSRR's right to abandon and salvage the line, the condition requested by MEC that would require TSRR to leave the line, track, ties and other track materials intact and undisturbed, will also be imposed. This condition, imposed in an abundance of caution, may be removed, if appropriate, if TSRR and MEC resolve their apparent disagreement concerning their respective legal rights to the line at issue.

As conditioned, this decision will not significantly affect either the quality of the human environment or the conservation of energy resources.

It is ordered:

1. This proceeding is reopened.

2. Upon reconsideration, the exemption of the abandonment of the line described above is subject to the condition that TSRR shall leave the line, track, ties and other track materials intact and undisturbed. The exemption is also subject to the conditions, in the event that salvaging of the line, track, ties, and other track materials is ultimately permitted to occur, that: (1) prior to conducting any abandonment and salvaging activities, TSRR shall consult with the Corps on permitting requirements for any abandonment and salvaging activities that may occur within waters of the United States, including, but not limited to, streams, rivers, lakes, and wetlands; (2) if salvaging activities have not been initiated by November 6, 2004, TSRR shall conduct a follow-up consultation with FWS - New England Field Office, prior to initiating any salvaging activities, regarding potential impacts from salvaging activities to threatened species, and TSRR shall report the outcome of these consultations to SEA; (3) if salvaging occurs, during any salvage activities, TSRR shall remove all ties and rails from the right-of-way for proper disposal, reuse or recycling; (4) TSRR shall notify NGS 90 days prior to salvage activities so that NGS can plan for removal of the 11 geodetic station markers identified on the line; and (5) TSRR shall retain its interest in and take no steps to alter the historic integrity of the right-of-way until completion of the section 106 process of the NHPA.

3. This decision is effective on its service date.

By the Board, David M. Konschnik, Director, Office of Proceedings.

Vernon A. Williams
Secretary