36294
EB             SERVICE DATE – LATE RELEASE NOVEMBER 18, 2005

SURFACE TRANSPORTATION BOARD

DECISION

STB Docket No. AB-862X

TWIN STATE RAILROAD COMPANY—ABANDONMENT EXEMPTION—IN CALEDONIA AND ESSEX COUNTIES, VT

Decided:  November 17, 2005

On September 7, 2005, Twin State Railroad Company (TSRR) filed a request for clarification, seeking the Board's guidance on questions referred to the Board by the United States District Court for the District of Massachusetts in <u>Twin State Railroad Corp. v. Maine Central Railroad Company</u>, Civil Action No. 04-12292-JLT.  On September 21, 2005, Maine Central Railroad Company (MEC) replied to TSRR's request for clarification.

This case arises out of a lease entered into in 1984 between TSRR and MEC.  The lease gave TSRR authority to operate a line running from Gilman, VT, to St. Johnsbury, VT

In 2004, TSRR sought an exemption that would give it authority to abandon the line and salvage the physical plant.  MEC challenged the exemption, arguing that, as TSRR was only a lessee, it was entitled to no more than discontinuance authority.  In a decision served October 12, 2004 (October 2004 decision), the Board granted TSRR a conditional abandonment exemption, but it also required the parties to leave the line, track, ties and other track materials intact and undisturbed until certain issues regarding TSRR's legal rights to the line's assets were resolved.

TSRR then instituted a court proceeding, seeking a declaration that, pursuant to a 1984 lease agreement (Lease) between it and MEC, it had the right to remove the ties, track, equipment and other property on the line.  MEC filed a motion to dismiss the complaint, arguing that TSRR's claims are preempted by the Interstate Commerce Act (ICA) and, in the alternative, asking the court to refer the matter to the Board under the doctrine of primary jurisdiction.  In its referral order issued on August 3, 2005, the court asked that we determine whether the October 2004 decision preempts the court from adjudicating any claims related to the line's underlying assets or otherwise preempts it from declaring the rights and liabilities of the parties under the Lease.

Congress gave the Board exclusive and plenary authority over rail line abandonments, and Board authority is required before a railroad line can be lawfully abandoned.  <u>Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.</u>, 450 U.S. 311, 319-21 (1981).  Any party seeking the abandonment of a rail line, or discontinuance of rail service, must first obtain appropriate

STB Docket No. AB-862X

authority from the Board, see Consolidated Rail Corp. v. ICC, 29 F.3d 706 (D.C. Cir. 1994), notwithstanding any contractual arrangement between parties regarding provision of rail service or use of a rail line, see Thompson v. Texas Mexican R. Co., 328 U.S. 134, 147 (1946). In the October 2004 decision, the Board required that the line remain intact and undisturbed until the parties resolved their disagreement over their respective legal rights to the line. By conditioning the abandonment in this way, the Board retained jurisdiction over the line, its abandonment and its salvage until that condition (and other routine conditions imposed in that decision) were met.

The condition at issue here requires TSRR to resolve two issues before TSRR could remove track materials from the line. First, TSRR must show that it is more than a typical lessee, holding a sufficient property interest in the line to abandon it. Second, TSRR must show that MEC has no common carrier obligation on the line (because a line of railroad cannot be abandoned if any party retains a common carrier obligation to serve it).

Concerning TSRR's property interest in the line, MEC contends that TSRR is a non-exclusive lessee without property or contractual rights sufficient to abandon the line. Typically, a lessee does not acquire a sufficient ownership interest in the line to allow a lessee to abandon it. Despite its opportunities to resolve this condition, TSRR has not shown that its lease is exclusive or that it is more than a typical lessee of the line. It argues that it has a right to the physical assets underlying the line when it is retired, but this right, even if the court finds it exists, can be exercised only after the Board has authorized full abandonment of the line.

MEC contends that the Lease gives it the right to operate over the line contemporaneously with TSRR and that it retains a common carrier obligation to provide rail service over the line. Generally, a railroad lessor retains a common carrier obligation, residual or otherwise, over the rail line that it leases out. TSRR has not shown otherwise. Thus, it appears that MEC retains a common carrier obligation to service the line, and, until TSRR can demonstrate that MEC does not have a common carrier obligation, exercise of the abandonment authority granted in October 2004 is premature. Accordingly, the conditional abandonment exemption granted in the October 2004 decision will be revoked, and TSRR will be granted discontinuance authority only, subject to the conditions previously imposed in this proceeding, including employee protective conditions.

While the court may interpret the Lease as to parties' ownership interests in the line's assets, in these circumstances, the physical assets underlying the line may not be removed for salvage until the Board has authorized full abandonment (including the apparent need to authorize MEC's abandonment of the line). But TSRR is not without a process for pursuing the relief it seeks. If the court determines, or the parties agree, that TSRR holds title to the line's assets, TSRR may file for adverse abandonment authority. Through that filing TSRR may seek a Board finding that the public convenience and necessity require or permit MEC's abandonment so that the Board's jurisdiction would not shield MEC from TSRR's legal enforcement of its rights to remove the line's assets through the salvage process. Adverse abandonments are often contentious matters and cannot be obtained through the Board's exemption procedures. Instead, TSRR would need to file an application for such adverse action under 49 U.S.C. 10903 and the Board's regulations.

STB Docket No. AB-862X

  In sum, the ICA preempts any court order that would require or allow the removal of the ties, track, equipment and other property on the line before full abandonment authority is issued and any and all conditions are met.  Otherwise, there is nothing that would preempt the court from determining and declaring the rights and liabilities of the parties under the Lease.

  This action will not significantly affect either the quality of the human environment or the conservation of energy resources.

  <u>It is ordered</u>:

  1.  The conditional abandonment authority granted in the October 2004 decision is revoked.

  2.  TSRR is granted authority to discontinue operations over the line, subject to the conditions imposed previously in this proceeding.

  3.  This decision is effective on the date of service.

  By the Board, Chairman Nober, Vice Chairman Buttrey, and Commissioner Mulvey.


                Vernon A. Williams
                   Secretary